**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: July 18, 2013.**

_____
**H. CHRISTOPHER MOTT
UNITED STATES BANKRUPTCY JUDGE**
_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 12-12232-HCM |
| JEFFERY MICHAEL BARNES | § | (Chapter 7) |
|     Debtor | § | |

| | | |
|---|---|---|
| KAREN RUTLEDGE | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | |
| | § | ADVERSARY NO. 12-1192-HCM |
| JEFFERY MICHAEL BARNES | § | |
|     Defendant | § | |

### ORDER GRANTING PLAINTIFF'S MOTION FOR SANCTIONS

      On July 1, 2013, the Court conducted a hearing on the Motion for Sanctions ("Motion") (dkt# 25) filed by Karen Rutledge, plaintiff in this adversary proceeding ("Plaintiff"), against Jeffrey Michael Barnes, defendant in this adversary proceeding ("Defendant"). Counsel of record for Plaintiff (Beverly Reeves and Sabrina Streusand) appeared at the hearing. Current attorney of record for Defendant (Stephen Sather) appeared at the hearing. The Defendant personally did not appear at the hearing. After considering the Motion, the Response and Amended Response (dkt# 29, 31) filed by Defendant, the Replies filed by Plaintiff (dkt# 30, 32), the record, and the statements and arguments of counsel, and after careful consideration, the Court finds that the Motion should be granted to the extent set forth in this Order and for the reasons set forth below.

This Order includes the Court's findings of fact and conclusions of law under Rules 7052 and 9014 of the Federal Rule of Bankruptcy Procedure ("Bankruptcy Rules").[1] To the extent any finding of fact is construed to be a conclusion of law, they are hereby adopted as such; to the extent any conclusion of law is construed to be a finding of fact, they are hereby adopted as such.

The Court has jurisdiction over the Motion and this adversary proceeding under 28 U.S.C. §§157 and 1334, and this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

**FINDINGS OF FACT WITH PROCEDURAL BACKGROUND**

Bankruptcy Procedural Background

On October 1, 2012, Defendant, as debtor, filed a voluntary petition under Chapter 7 of the Bankruptcy Code with this Court, bankruptcy case no. 12-12232.

On December 27, 2012, Plaintiff initiated this adversary proceeding no. 12-1192 against the Defendant by filing her Complaint (dkt# 1). In general, through such Complaint and in this adversary proceeding, Plaintiff seeks to except her debt from the Defendant's bankruptcy discharge under 11 U.S.C.§523(a)(2), §523(a)(4) and/or §523(a)(6). On January 28, 2013, Defendant filed an Answer to the Complaint (dkt# 2) through his then attorney of record-Michael Baumer. No challenge to the legal sufficiency of Plaintiff's Complaint was made in such Answer filed by Defendant. On January 29, 2013, the Court entered a Scheduling Order in this adversary proceeding, setting certain deadlines (dkt# 5).

On April 12, 2013, Defendant's original attorney of record in this adversary proceeding (Michael Baumer) filed a Motion to withdraw as counsel for Defendant, citing that such counsel and Defendant have been unable to agree on how to proceed with this adversary proceeding and there were communication problems between such counsel and Defendant (dkt# 7). After hearing on notice to Defendant, the Court granted the Motion to withdraw by Order entered on May 1, 2013 (dkt# 12). At the same time, the Court conducted a hearing on and granted an extension of the deadlines set forth in the Scheduling Order and entered an Amended Scheduling Order (dkt# 11). On May 1, 2013, and after the hearing concluded, the Court received a letter from Defendant which was docketed by the Clerk (dkt# 13).

---

[1] The Court requested Plaintiff's counsel to submit proposed findings of fact and conclusions of law with respect to the Motion, prior to the Court issuing a ruling on the Motion. The Court has specifically and individually considered each proposed finding of fact and conclusion of law, and the findings and conclusions set forth in this Order are those reached independently by the Court after careful consideration of the evidence, record and applicable law and considering the informal objections made to such proposed findings and conclusions by Defendant's counsel. The Court has not considered the unfiled Declaration of Plaintiff's counsel submitted after the hearing on the Motion.

On May 24, 2013, Plaintiff filed a Motion to Compel the deposition of Defendant, as well as a seeking to compel Defendant to respond to discovery requests (dkt# 21). In such Motion to Compel, Plaintiff stated that Defendant had failed and refused to appear for deposition on two occasions in this adversary proceeding, and had previously refused to appear for deposition on three occasions in a state court suit between Plaintiff and Defendant. Such Motion to Compel was served upon Defendant's new attorney of record in this adversary proceeding (Stephen Sather) (dkt# 23).

On May 28, 2013, the Court entered an Order on Plaintiff's Motion to Compel deposition of Defendant, which was agreed to by Defendant's new attorney of record and Plaintiff's counsel of record (dkt# 22)("Order Compelling Deposition"). The Order Compelling Deposition ordered Defendant to appear for deposition to be taken by Plaintiff on May 31, 2013 at the offices of Defendant's counsel. The Order Compelling Deposition further provided that if Defendant (Jeffrey Barnes) "shall fail to appear for his deposition, the Court shall award sanctions to be determined by further order unless Barnes shall establish 'extraordinary circumstances' that precluded his appearance" (dkt# 22, p.2).

Defendant failed to appear for his deposition on May 31, 2013 as required by this Court's Order Compelling Deposition. As set forth more fully below, the Court finds that Defendant failed to demonstrate any 'extraordinary circumstances' that prevented or precluded his appearance at the May 31, 2013 Court-ordered deposition.

On June 3, 2013, Plaintiff filed the instant Motion for Sanctions with supporting exhibits and declarations (herein "Motion")(dkt# 25). In general, through such Motion, Plaintiff seeks sanctions against Defendant in the form of striking of Defendant's answer, granting a default judgment against Defendant, and an award of attorneys fees and expenses. Such relief is sought by Plaintiff under Rule 37 of the Federal Rules of Civil Procedure ("FRCP").

Given the seriousness of the Motion and the relief sought by Plaintiff, the Court entered a specific Order requiring that any response by Defendant to the Motion be filed by June 25, 2013 and setting a hearing on the Motion for July 1, 2013 (dkt# 26). Defendant filed a timely Response to the Motion on June 25, 2013, which admitted and denied certain of the allegations in the Motion ("Response")(dkt# 29). Defendant then filed an untimely Amended Response to the Motion on June 28, 2013, which for the first time asserted that Plaintiff's Complaint failed to state a cause of action ("Amended Response") (dkt# 31). On June 27, 2013, Plaintiff filed a Reply to the Response (dkt# 30), and on July 1, 2013, Plaintiff filed a Reply to the Amended Response (dkt# 32).

Defendant's Repeated Failure and Refusal to Appear for Deposition in State Court

Plaintiff has attempted, on numerous occasions, to take the deposition of Defendant for almost two years without success. These unsuccessful attempts at taking Defendant's deposition first started in state court, and then following Defendant's bankruptcy filing, have continued in the adversary proceeding in this Court.

On June 22, 2011, Plaintiff initiated a state court suit ("State Court Suit") against

3

Defendant and his mother (Susann Pennington) to collect a debt in 126th Judicial District, Travis County, Texas ("State Court"), cause no. D-1-GN-11-001861 (dkt# 25, Ex. 8). After Defendant filed his Chapter 7 bankruptcy petition, Plaintiff filed this adversary proceeding objecting to the discharge of Plaintiff's debt. In the State Court Suit and now in this adversary proceeding, Plaintiff seeks to recover $450,318 in damages she allegedly sustained when she conducted business with Defendant, Ms. Pennington and their interior design companies.

In August 2011, Plaintiff first requested available dates for the deposition of Defendant in the State Court Suit from Defendant's first attorney--Mr. Michael Klein (dkt# 25, Ex. 9-A). Plaintiff did not receive deposition dates from Defendant's attorney. On October 26, 2011, Defendant's attorney advised that he was withdrawing from representation of Defendant and that a second new attorney—Mr. Randy Howry--would be substituting in as attorney for Defendant (dkt# 25, Ex. 9-B). Then on four more occasions—February 6, 2012, February 22, 2012, March 6, 2012, and March 12, 2012—Plaintiff's counsel requested deposition dates from Defendant's second attorney and raised concerns regarding Defendant's deficient discovery responses in the State Court Suit (dkt# 25, Ex. 9-C). Receiving no response, on March 26, 2012, Plaintiff's counsel then issued a notice for Defendant's deposition for April 26, 2012, and advised that Plaintiff would work with Defendant on scheduling the deposition (dkt# 25, Ex. 9-D).

On March 28, 2012, Defendant's second attorney requested that the deposition of Defendant be rescheduled, which Plaintiff agreed to and suggested May 15-16, 2012 for Defendant's deposition and that of Ms. Pennington (dkt# 25, Ex. 9-D). On April 2, 2012, Plaintiff's counsel again requested dates for Defendant's deposition (dkt# 25, Ex. 9-E). On April 12, 2012, Defendant's second attorney agreed that Defendant and Ms. Pennington would appear for deposition (six weeks later) on May 22-23, 2012 (dkt# 25, Ex. 9-D). On May 18, 2012, the Friday before the scheduled deposition of Defendant and Ms. Pennington, Plaintiff's counsel received an email from Defendant's second attorney stating that due to health issues involving family members, Defendant and Ms. Pennington needed to cancel the depositions currently scheduled for May 22-23, 2012 (dkt# 25, Ex. 9-F). Plaintiff objected and Defendant and Ms. Pennington then agreed to appear for the scheduled depositions on May 22-23, 2012.

About one hour before Defendant's May 23, 2012 scheduled deposition, Plaintiff's counsel received an email from Defendant's second attorney stating that he had "just received a phone call from my client. Mr. Barnes (Defendant) is ill this morning and will be unable to attend his deposition" (dkt# 25, Ex. 9-G). Plaintiff's counsel then requested new dates for Defendant's deposition (dkt# 25, Ex. 9-H).

It was then agreed that Defendant would appear for deposition on June 20, 2012, and Plaintiff's counsel served a Second Amended Notice of Deposition to Defendant for such date (dkt# 25, Ex. 9-I). In email correspondence on June 19, 2012 (the day before Defendant's rescheduled deposition), Defendant's second attorney advised Plaintiff that Defendant would not attend his rescheduled deposition, stating "[a]lthough I do not have the document in hand, I am told that I will shortly have a letter from a doctor that will

4

reflect that Jeff (Defendant) is not medically able to attend his depo tomorrow…this is the best I can do at this point" (dkt# 25, Ex. 9-J). That same afternoon, Defendant's attorney advised that "pursuant to doctor's orders, Mr. Barnes will be unable to participate in a deposition tomorrow. I will let you know when or if he is released to do so in the future" (dkt# 25, Ex. 9-J). Plaintiff's counsel contacted Defendant's second attorney to again request a rescheduled deposition date for Defendant and to seek clarification regarding Defendant's alleged medical condition. On June 25, 2012, after Defendant's second attorney failed to respond, Plaintiff's counsel requested another date for Defendant's rescheduled deposition and requested information as to the nature of Defendant's alleged illness to determine when and whether Defendant's deposition could occur (dkt# 25, Ex. 9- K).

Thereafter, Defendant then produced a letter from a Dr. Lisa Ehrlich—Defendant's first doctor--stating "Based on his office visit on 6/19/2012, Mr. Barnes is advised not to undergo deposition until his blood pressure is controlled. His follow up appointment is scheduled for 7/26/2012" (dkt# 25, Ex. 7). On June 28, 2012, Plaintiff's counsel served a Third Amended Notice of Deposition to Defendant (dkt# 25, Ex. 9-L). On July 9, 2012, Plaintiff's counsel emailed Defendant's lawyer reiterating the prior request for an explanation as to Defendant's alleged medical condition, stating "Please note that I noticed that deposition because I have called several times and sent you guys a letter requesting dates and no one ever called me back or responded to the letter" (dkt# 25, Ex. 9-M).

On July 27, 2012, Plaintiff filed a Motion to Compel Deposition of Defendant with the State Court (dkt# 25, Ex. 9). After hearing on Plaintiff's Motion to Compel, the State Court did not accept Defendant's medical excuse, and ordered Defendant to (1) appear for his deposition during the week of August 20-24, 2012; and (2) pay Plaintiff's attorney fees in the amount of $5,160 "no later than August 20, 2012 at 5 p.m.!" (emphasis in original). The Order also stated that if Defendant failed to appear for his deposition "the Court will strike the answers of Jeffrey Barnes, Room 635, LLC, Room 135, LLC and Design Atelier 1105, Inc." (dkt# 25, Ex. 10). The parties then agreed that Defendant would appear for his deposition on August 21, 2012. In violation of and in disregard for the State Court's order, Defendant neither appeared for his deposition in August 2012 nor paid the attorney fees ordered by the State Court, which led to Plaintiff filing yet another Motion to attempt to obtain the deposition of Defendant (dkt# 25, Ex. 11). At that point, Plaintiff had been trying to depose Defendant –unsuccessfully--for an entire year.

On September 18, 2012, Plaintiff filed a Motion to Enforce the Court's Order and For a Finding of Civil Contempt ("Motion to Enforce") with the State Court, requesting that the State Court strike the Answer of Defendant (dkt# 25, Ex. 11). After hearing on September 25, 2012 on Plaintiff's Motion to Enforce, the State Court ordered that the answer of Defendant be stricken and also awarded attorney fees in the amount of $1,000. The State Court also ordered Defendant to appear in court for contempt proceedings to be conducted on October 10, 2012 (dkt# 25, Ex. 12).

5

Then, Defendant sought refuge in the bankruptcy court (this Court). On October 2, 2012, eight days before the contempt hearing in State Court for Defendant's repeated failure to appear for deposition, Defendant filed his Chapter 7 bankruptcy petition in this Court. Defendant has never appeared for his deposition and has not paid any of the court-ordered attorney fees in the State Court Suit. *See* Transcript from July 1, 2013 Motion for Sanctions Hearing, dkt# 34, 9:10-14 ("Sanctions Transcript").

<u>Defendant's Repeated Failure and Refusal to Appear for Deposition in this Court</u>

Once Defendant filed bankruptcy in this Court, Defendant continued his pattern of delay and refusal to appear for deposition and cooperate in discovery, now in the context of this adversary proceeding. Plaintiff filed this adversary proceeding against Defendant on December 27, 2012 (dkt# 1), and thereafter noticed Defendant's deposition for March 14, 2013 (dkt# 21). On February 7, 2013, Plaintiff served Defendant with written discovery–Interrogatories and Requests for Production. Defendant never served objections nor responded to Plaintiff's discovery requests. *See* dkt# 25, p. 5; dkt# 21, p. 5; dkt# 34, Sanctions Transcript 10:4-13. Defendant failed to appear for his March 14, 2013 deposition, despite agreeing to the date. *See* Sanctions Transcript, 11:2-5, dkt# 34.

On April 12, 2013, Defendant's attorney Mr. Michael Baumer—Defendant's third attorney in the dispute with Plaintiff--filed a Motion to Withdraw as attorney for Defendant in this adversary proceeding (dkt# 7). Defendant's third attorney advised this Court that he and Defendant "are unable to agree on how to proceed in this case" and that "communication problems have persisted since the filing of the adversary" (dkt# 7). This Court scheduled a hearing and granted such Motion permitting Mr. Baumer to withdraw as attorney for Defendant (dkt# 12). This Court required Mr. Baumer to send a copy of this Order to Defendant by regular mail and by email. This Court's Order stated that adversary proceedings in federal court are difficult, complicated proceedings with discovery procedures and rules and numerous deadlines that must be timely complied with by all parties, whether they are pro se or represented by counsel, and specifically advised Defendant that "[f]ailure of Defendant to timely comply with and abide by discovery rules and procedures, and other rules, deadlines, and the Amended Scheduling Order, may have serious adverse consequences to Defendant" (dkt# 12, pp.1-2).

By letter received May 1, 2013, Defendant personally notified this Court that he was seeking another attorney and that once he had obtained another attorney (which would be his fourth), he would be able to complete discovery, explore settlement options, and be prepared for trial in November 2013 (dkt# 13). Notably, in this letter written by Defendant's own hand, he did not (1) reference any medical or mental issues whatsoever or (2) inform the Court that he was intimidated by counsel for Plaintiff–all arguments Defendant (through and by using his fourth attorney Mr. Sather) later asserted as justification for his failure to appear for his Court-ordered deposition.

On May 7, 2013, Defendant was again noticed for deposition to be conducted on

6

May 16, 2013 (dkt# 21, p. 2). Defendant did not appear for a May 16, 2013 deposition. Defendant hired his fourth attorney—Mr. Stephen Sather—who made an appearance in this adversary proceeding for Defendant (dkt# 23).

On May 24, 2013, Plaintiff filed a Motion to Compel Deposition of Jeffery Barnes, Motion to Compel Responses to Discovery and for Attorney Fees with this Court (dkt# 21). On May 28, 2013, the Court entered an Order on Plaintiff's Motion to Compel deposition of Defendant, which was agreed to by Defendant's fourth attorney and Plaintiff's counsel of record (dkt# 22)(herein "Order Compelling Deposition"). The Order Compelling Deposition ordered Defendant to appear for deposition to be taken by Plaintiff on May 31, 2013 at the offices of Defendant's counsel. The Order Compelling Deposition further provided that if Defendant (Jeffrey Barnes) "shall fail to appear for his deposition, the Court shall award sanctions to be determined by further order unless Barnes shall establish 'extraordinary circumstances' that precluded his appearance" (dkt# 22, p.2).

On May 27, 2013, Plaintiff's counsel requested Defendant's fourth attorney (Mr. Sather) to confirm Defendant's appearance at his deposition set by Court order for May 31, 2013. *See* Sanctions Transcript 22:16-23, dkt# 34; dkt# 25, Ex. 13-C. On Wednesday, May 29, 2013, Plaintiff's counsel again requested that Defendant confirm his attendance at the deposition and Defendant did so (dkt# 25, Ex. 3; Sanctions Transcript 22: 11-15, dkt# 34). Late in the afternoon the next day, in response to his lawyer's question "Are you showing up tomorrow or should I cancel. The Court Reporter?" [sic], Defendant stated "My doctor is forward [sic] me a statement via email regarding my blood pressure and anxiety issues. I will forward once I receive it." Defendant's fourth attorney Mr. Sather was then notified, not by Defendant, but by Ms. Pennington—that Defendant would not appear for the May 31, 2013 Court-ordered deposition (dkt# 25, Ex. 4; Sanctions Transcript, 20:24, 21:1-3, dkt# 34).

Defendant then forwarded a letter dated May 30, 2013, purportedly signed by a new doctor—a Dr. Shannon Schrader, Defendant's second doctor—advising that "due to his most recent blood pressure recordings" that Defendant should "not be subjected to any high stress situations such as court proceedings or depositions" (dkt# 25, Ex. 5). In truth, however, Defendant was <u>not</u> examined by anyone in Dr. Schrader's office on May 30, 2013 (dkt# 25, Ex. 6). In fact, Dr. Schrader was on vacation and was in an airplane when his nurses constructed the letter for Defendant. In fact, Dr. Schrader had not signed the May 30, 2013 letter, was not aware of its existence, and Dr. Schrader retracted the letter the following morning, May 31, 2013 (dkt# 25, Ex. 6).

In correspondence to Defendant's attorney, Dr. Schrader provided the circumstances surrounding the preparation of this May 30, 2013 letter, stating:

> "Mr. Barnes called the office to speak with one of the nurses requesting a letter and asked that it be addressed "To whom it may concern". *He also stated that he had a problem and needed the letter for a deposition that he had scheduled for the following day*. He asked that his diagnosis' of high blood pressure and anxiety be included in

7

the letter. He then stated he would be taking a Clonazepam for his anxiety. The request was turned over to another nurse who in turn wrote the letter. She then called the patient for clarification and Mr. Barnes stated he needed the letter *"to get on the same page with the opposition". Mr. Barnes' mother subsequently called and requested that the letter say "it is recommended he not be in stressful situations".* As per my nurse, the mother stated this request was from the attorney." *(emphasis added)* (dkt# 25, Ex. 6)

Dr. Schrader also retracted the May 30, 2013 letter on May 31, 2013, stating:

"I am retracting the letter, as written by my office in their attempt to accommodate the patient, on the grounds that *I would not state that his medical issues would preclude him from being deposed or appearing in court.*" *(emphasis added)*(dkt# 25, Ex. 6)

It is apparent that Defendant and his mother (Ms. Pennington) cajoled Dr. Schrader's staff to write and sign this letter on Dr. Schrader's behalf without Dr. Schrader's knowledge—all in an effort for Defendant to get out of the deposition set and ordered by this Court to be conducted on May 31, 2013—a deposition date that Defendant had agreed to just days before (dkt# 22). Dr. Schrader stated in his email that there was a lapse in judgment on the part of his nurse and their actions in preparing this May 30, 2013 letter were grounds for termination. Dr. Schrader further stated that Defendant came to his office on March 13, 2013 and May 16, 2013 (dkt# 25, Ex. 6). Notably, it cannot be a coincidence that the two previous depositions of Defendant set in this adversary proceeding were for March 14, 2013 and May 16, 2013**.**

Defendant did not appear for his deposition on May 31, 2013 as required by this Court's Order Compelling Deposition. Defendant knew that he had been ordered by this Court to appear for deposition on May 31, 2013. *See* Sanctions Transcript, 21:19-22 (dkt# 34).

Plaintiff's Motion for Sanctions

On June 3, 2013, Plaintiff filed the instant Motion for Sanctions (herein "Motion") with this Court, citing Defendant's numerous discovery abuses (dkt# 25). In that Motion, Plaintiff requested that this Court grant the Motion, strike Defendant's answer and enter a default judgment on Plaintiff's behalf. Plaintiff also requested that this Court order Defendant to pay attorneys fees and expenses in the amount of $19,690. On June 4, 2013, the Court entered an Order setting deadlines regarding the Motion, which required that "any Response to the Motion must be filed by Defendant and served by June 25, 2013." (emphasis in original) (dkt# 26).

On June 25, 2013, Defendant (through his fourth attorney Mr. Sather) timely filed his Response to Plaintiff's Motion (dkt# 29). In that Response, Defendant's attorney alleged, for the first time in this Court, that he "suffers from legitimate medical conditions which have hindered his ability to appear for a deposition at this time" and that he was

8

"severely intimidated by Plaintiff's counsel." (dkt# 29, p.2). But the Response is not verified or supported by affidavit from Defendant. Defendant did not personally appear at the hearing on the Motion to support these allegations. Notably, Defendant did not make those allegations when corresponding directly with this Court by letter written by Defendant's own hand that was received and docketed on May 1, 2013 (dkt# 13). Likewise, neither Defendant (nor his attorney) made those type of allegations or suggestions when Defendant agreed to appear for his deposition on May 31, 2013 as set forth in this Court's Order. *See* Order Compelling Deposition (dkt# 22).

Attached to Defendant's Response is a note from Dr. Priscilla Ray—yet another (third) doctor, which is dated June 18, 2013 (dkt# 29, Ex. A). Dr. Ray states that she had evaluated Defendant on June 7, 2013. This is after Defendant failed to appear for his Court-ordered May 31, 2013 deposition; after Dr. Schrader (the second doctor) retracted his May 30, 2013 letter on the grounds that Dr. Schrader "would not state that his (Defendant's) medical issues would preclude him from being deposed or appearing in court" (dkt# 25, Ex. 6); and after Plaintiff had filed the Motion for Sanctions. Nowhere in Dr. Ray's note does she say that Defendant has been or would be unable to be deposed (dkt# 29, Ex. A). The Court does not believe that Defendant is legitimately intimidated by Plaintiff's counsel, and like Dr. Schrader, the Court does not believe that any medical issues would prevent Defendant from giving his deposition or appearing in court.

The Court conducted a hearing on the Motion on July 1, 2013. *See* Sanctions Transcript (dkt# 34). Mr. Sather, Defendant's fourth attorney, appeared at the hearing for Defendant, and was candid and forthright with the Court. Although aware of the hearing and requested by his attorney to appear in person at the hearing, Defendant chose not to appear in person at the hearing. *See* Sanctions Transcript 3:17-23 (dkt# 34).

This Court finds that Defendant failed to demonstrate any "extraordinary circumstances" that prevented or precluded his appearance at the May 31, 2013 Court-ordered deposition under the Order Compelling Deposition. And at the hearing on the Motion, Defendant's existing attorney (Mr. Sather) candidly and effectively agreed that no extraordinary circumstances existed, and that the real question was the appropriate sanction. *See* Sanctions Transcript, 11:2-25; 12:1-11 (dkt# 34).

Plaintiff has incurred reasonable and necessary attorney fees and expenses in the amount of $19,690 due to Defendant's discovery abuses (dkt# 25, Ex. 13).

## **CONCLUSIONS OF LAW**

Rule 37 of the Federal Rules of Civil Procedure (herein "FRCP") governs sanctions for discovery abuses. FRCP 37 applies in an adversary proceeding, such as this one pending between Plaintiff and Defendant, under Bankruptcy Rule 7037.

FRCP 37(b)(2) authorizes a court to strike pleadings and render a default judgment against a party as a sanction for failure to comply with a discovery order. See

9

FRCP 37(b)(2)(A)(iii), (iv) ("[i]f a party ... fails to obey an order to provide or permit discovery…the court where the action is pending may issue further just orders. They may include the following…striking pleadings in whole or in part...or rendering a default judgment against the disobedient party"). FRCP 37(b)(2)(C) also authorizes the court to order payment of expenses and reasonable attorney fees resulting from the failure of a disobedient party.

FRCP 37(d) also authorizes sanctions if a party fails to appear for his own deposition. Sanctions for a party's violation of FRCP 37(d) include the same sanctions available under FRCP 37(b)(2)(A)(i)-(vi). *See* FRCP 37(d)(3). FRCP 37(d)(3) also authorizes this Court to award reasonable and necessary attorney fees resulting from a party's discovery abuses.

This Court is mindful that the "death penalty" sanction for discovery abuse—rendition of a default judgment—is severe, and should not be lightly imposed. Generally, when a court awards a default judgment as a sanction for discovery abuse, two criteria must be met: (1) the penalized party's discovery violation must be willful; and (2) the default judgment is to be used only where a lesser sanction would not substantially achieve the desired deterrent effect. *See e.g., Plasticsource Workers Committee v. Coburn*, 283 Fed. Appx. 181, 184 (5th Cir. 2008) (supporting citation omitted); *U.S. v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003). The court may also consider whether the discovery violation prejudiced the opposing party's preparation for trial and whether the client was blameless in the violation. *See e.g., Batson v. Neal Spelce Associates, Inc.*, 765 F.2d 511, 514 (5th Cir. 1985).

The Fifth Circuit has recognized that the use of this ultimate sanction is not an abuse of discretion when the actions of the offending party are unjustified. *See e.g., Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998) (holding that when the defendant's conduct is dilatory and obstructive, the extreme sanction of default judgment is warranted); *Bonaventure v. Butler*, 593 F.2d 625, 626 (5th Cir. 1979)(holding that the deliberate, repeated refusals to comply with discovery orders justify the use of this ultimate sanction); *Emerick v. Fenick Indus., Inc.,* 539 F.2d 1379, 1381 (5th Cir. 1976)(holding that when a defendant demonstrates flagrant bad faith and callous disregard of its responsibilities, the court's choice of the extreme sanction is not an abuse of discretion).

Here, the Court concludes that Defendant has willfully and intentionally failed and refused to appear for his deposition on repeated occasions (including failing to appear under this Court's Order Compelling Deposition), and such failure and refusal by Defendant is unjustified. The Court further concludes that the Defendant's own conduct has been dilatory and obstructive with respect to Plaintiff's discovery efforts, that Defendant himself (not his attorneys) has prejudiced Plaintiff in the preparation for trial of its case. Defendant personally (not his attorney) has acted in bad faith and Defendant is to blame. Based on the facts and circumstances in this particular case, the Court must also conclude that no lesser sanction would achieve the deterrent effect, and that the death penalty sanction is the appropriate sanction.

The reasons for these conclusions are set forth at length above in the Court's

Findings of Fact. In short, this Court's Order Compelling Deposition entered May 28, 2013 (dkt# 22)-and agreed to by Defendant--required Defendant to appear for deposition on May 31, 2013. Defendant intentionally, willfully, and knowingly refused to appear for his May 31 deposition, failed to comply with this Court's Order, and failed to demonstrate any "extraordinary circumstances that precluded his appearance" as set forth in the Order Compelling Deposition. Instead, Defendant conjured up a letter from Dr. Schrader's office which was obtained and submitted by Defendant personally under false pretenses. Defendant had fair warning that his refusal to appear for his deposition and comply with his discovery obligations would result in sanctions (dkt# 22, 12), yet Defendant callously disregarded this Court's Orders and his discovery obligations.

And this is far from Defendant's only sins. Defendant has failed to appear for deposition in this adversary proceeding on three (Defendant concedes it is at least two) occasions. Defendant never responded to Plaintiff's Interrogatories or Requests for Production, which was willful and knowing and has also prejudiced Plaintiff in preparing for trial. Defendant's pattern of intentional and willful obstructive and dilatory conduct—which started in State Court by Defendant refusing to appear for deposition on multiple occasions and disobeying and ignoring Orders of the State Court—has continued in this Court. By this Court's count, Defendant has unjustifiably refused to appear for his deposition at least five occasions in the State Court Suit and this following adversary proceeding.

Defendant's scheme to avoid giving his deposition has also revolved around hiring one attorney after another—by this Courts count, four attorneys in two years—and the three previous attorneys have likely withdrawn in part because of Defendant's refusal to appear for deposition and comply with discovery obligations and court orders. Defendant's scheme also involves obtaining doctor's notes—just before or after deposition dates that Defendant agreed to—some under false pretenses (Dr. Schrader). The State Court did not "buy" Defendant's medical issues argument, and neither does this Court—particularly when Defendant fails to personally show up in Court at the hearing on the Motion to explain and let the Court evaluate his alleged condition.

Here, Defendant voluntarily sought the benefits of Chapter 7 bankruptcy in this Court, including a discharge of all of his debts. Yet the Defendant cannot obtain this benefit of Chapter 7 bankruptcy and at the same time refuse to comply with his obligations in bankruptcy. Defendant has not complied with this Court's Order Compelling Deposition, has refused to appear for deposition on numerous occasions, and has repeatedly abused the discovery process. Defendant's disregard for his discovery obligations and failure to abide by both this Court's Orders, as well as multiple State Court orders in the State Court Suit with Plaintiff over the past two years, demonstrates that Defendant has a conscious disrespect for the legal proceedings and has willfully attempted to delay and obfuscate Plaintiff's ability to prepare for trial and prosecute her claims. Defendant has had no less than four attorneys over this time frame, and he has utilized his attorneys to continue to delay and avoid providing his deposition.

The death penalty sanction is the only available remaining sanction against Defendant. Any lesser sanction would not substantially achieve the desired deterrent effect and would not be effective. In short, the sanction of a specific Court Order has not worked—Defendant has ignored both this Court's and the State Court's orders to appear for deposition. Defendant's last two attorneys—Mr. Baumer and Mr. Sather—are both credible and ethical attorneys that have appeared before this Court on multiple occasions. Yet these two excellent attorneys have been unable to get Defendant to appear for his deposition. The suggestion made by Defendant's attorney at the hearing on the Motion that Defendant would appear in open Court for a Court-supervised deposition—would not work either as history demonstrates. Defendant has repeatedly refused to appear for deposition no matter the location and repeatedly comes up with unjustified excuses at the last minute to avoid deposition. Defendant failed to personally appear in this Court at the hearing on the Motion, despite being requested to appear. Defendant failed to personally appear for a contempt hearing in State Court, instead he filed Chapter 7 bankruptcy just days before to avoid appearing in front of that Court.

A monetary sanction of requiring Defendant to pay fees and expenses for his discovery abuses has not worked; Defendant never paid the fees and expenses ordered by the State Court. This Court explored the possibility of monetary sanction again at the hearing on the Motion, and when asked if Defendant would pay legal fees and expense of Plaintiff for bringing the Motion, Defendant's attorney candidly stated "the short answer is no, he will not pay them." *See* Sanctions Transcript, 21:23-25,22:2-3 (dkt# 34). Contempt proceedings, although theoretically possible in this Court (the bankruptcy court), are fraught with pitfalls between the difference between civil contempt (which a bankruptcy court can impose) and criminal contempt (which a bankruptcy court cannot impose). *See e.g., In re Bradley,* 588 F.3d 254, 266 (5th Cir. 2009); *In re Terrebonne Fuel & Lube, Inc.,* 108 F.3d 609, 613 fn. 3 (5th Cir. 1997).

In sum, for any and all of the reasons set forth in this Order, Defendant's repeated and intentional discovery abuses justify the ultimate sanction of striking Defendant's Answer and the entry of a default judgment in favor of Plaintiff in this adversary proceeding. This is an extreme situation and merits these sanctions under these particular facts and circumstances.

Lastly, the Court will address Defendant's last-minute argument that Plaintiff's Complaint is legally insufficient and thus a default judgment cannot be rendered. On June 28, 2013–three days after the Court ordered deadline for a Response to the Motion–Defendant filed an Amended Response to the Motion, alleging, for the first time, purported legal deficiencies in the allegations in Plaintiff's Complaint (dkt# 31). Defendant's Amended Response was not timely filed within the deadline set by the Court, which was June 25, 2013 (dkt# 26). Defendant's "I did not think of it" until after the June 25, 2013 deadline is not a sufficient reason, under the circumstances of this case, to excuse the late filing. *See* Sanctions Transcript 15:2-22 (dkt# 34). Plaintiff's Complaint had been on file for nearly 6 months, and Defendant's sole Answer and response to the Complaint contains no challenge to the legal sufficiency of the Complaint (dkt# 1, 2).

Even if the Court were to consider Defendant's untimely and last-minute challenge to the sufficiency of Plaintiff's Complaint, it is without merit. Defendant cannot legitimately complain about a lack of specificity in Plaintiff's allegations in the Complaint, when Defendant has improperly and willfully avoided Plaintiff's discovery efforts for almost two years. Moreover, Plaintiff has sufficiently pled its causes of action against Defendant under FRCP 8 and its directive that "[p]leadings must be construed as to do justice." *See* FRCP 8(e). With respect to Plaintiff's fraud claims, the Complaint sufficiently pleads with particularity the circumstances surrounding the fraudulent acts pursuant to FRCP 9(b). Rule 9(b) requires simple, concise, and direct allegations of the circumstances constituting the fraud which makes relief plausible when taken as true. *U.S. ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 186 (5th Cir. 2009). Under the circumstances, Plaintiff has sufficiently set forth the "who, what, when, where, and how" of the alleged fraud by Defendant. *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.,* 417 F.3d 450, 453 (5th Cir.2005). Plaintiff has sufficiently alleged with particularity the nature of the fraud perpetrated by Defendant, and the circumstances surrounding the fraudulent acts. Plaintiff sets forth the manner in which Defendant induced Plaintiff to pay for items that were never ordered and pay for services that were never rendered. Plaintiff has also identified the time, place and contents of the representations made by Defendant as well as payments made to Defendant which resulted from his representations. *See* Complaint (dkt#1). For any and all of these reasons, Defendant's last-minute challenge to the legal sufficiency of Plaintiff's Complaint must be rejected.

**Based on the foregoing, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1. Plaintiff's Motion for Sanctions (dkt# 25) is granted as set forth below;

2. Defendant's Answer to Plaintiff's Complaint is hereby stricken;

3. A default judgment will be rendered in favor of Plaintiff and against Defendant in the amount of $450,318.44 in damages, plus reasonable and necessary attorneys fees and expenses in the amount of $19,690, and such judgment shall be non-dischargeable in Defendant's bankruptcy case under 11 U.S.C. §523(a)(2)(A), §523(a)(4), and/or §523(a)(6).

The Court will enter a separate Final Judgment of even date herewith in accordance with this Order under FRCP 58, which is made applicable to adversary proceedings under Bankruptcy Rule 7058.

###